### GRAY v. GRAND TRUNK WESTERN RY. CO.

(Circuit Court of Appeals, Seventh Circuit. May 18, 1907. Rehearing Denied Oct. 22, 1907.)

#### No. 1,339.

1. LIMITATION OF ACTIONS—PLEADING—DEMURRER RAISING DEFENSE.
    Under the common-law practice in force in Illinois, the question of limitation cannot be raised on demurrer to a declaration.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 670–675.
    Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

2. RECEIVERS—INJURIES RESULTING FROM OPERATION OF PROPERTY—NATURE OF LIABILITY.
    It is the settled doctrine of the federal courts that a receiver is not personally liable for injuries arising through negligent operation of the property not due to his personal negligence, but an action against him

for such injuries is in law one against the receivership in which the judgment recovered can be enforced only against the property or funds in his hands. and which cannot be maintained after the receivership has been closed and the receiver discharged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 322.

Actions by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 25 C. C. A. 49.]

**8. SAME—ASSUMPTION OF LIABILITY BY PURCHASER OF PROPERTY—NATURE OF LIABILITY.**

Where by the local law the obligation assumed by a successor or purchaser who takes over property or a fund from a receivership, with assumption of liabilities, is one of direct liability, and not merely equitable, for the payment of claims chargeable against the property or fund, such local law fixes the nature of the cause of action for the enforcement of such liability in a federal court, and an action at law may be maintained in such court against the purchaser alone to recover for a personal injury for which the property in the hands of the receiver was chargeable.

**4. PLEADING—DECLARATION—DUPLICITY.**

A declaration, in an action to recover for a tort committed by railroad receivers, against a purchaser which succeeded to the property, is not bad for duplicity because it alleges as grounds of liability an express assumption of liability for all claims against the receivership, and also that the defendant succeeded to betterments and improvements made by the receivers from earnings of the receivership which were liable for plaintiff's claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 134–137.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

This writ of error is from a final judgment against the plaintiff in error, as plaintiff below, upon demurrer sustained to the declaration, as finally amended, and election to stand by such declaration.

The transcript of record shows that the plaintiff in error filed suit in trespass on the case, December 7, 1900, in the superior court of Cook county, against F. C. Austin Manufacturing Company, and E. W. Meddaugh and Henry B. Joy, as receivers of Chicago & Grand Trunk Railway Company; and that in 1903 the Grand Trunk Western Railway Company was impleaded as a defendant therein. Subsequently, after issues joined and trial in that court upon which verdict was set aside. the proceedings resulted in submission to a dismissal as to the defendants Austin Manufacturing Company and the receivers (upon suggestion of the death of one receiver and discharge of the other. and delivery of all the railroad property to the defendant Grand Trunk Western Railway Company). and continuance of the cause with a new trial granted as against the Grand Trunk Western Railway Company. Thereupon, on application of such remaining defendant, the cause was removed to the Circuit Court of the United States, on June 19, 1905. Other proceedings in the Superior Court, which are referred to in the transcript, are not material upon this writ of error. Several amended declarations were filed, resulting in the final amended declaration, upon which this judgment of dismissal rests under demurrer.

This declaration avers that the plaintiff in error was injured on March 5, 1900, in operations of the railroad under receivers named, through negligence in such operation. while he was "in the exercise of due care and caution about his own safety," and that the receivers were appointed and acting under orders of the United States Court for the Eastern District of Michigan, in foreclosure proceedings against the railroad company then owning the road. For recovery thereupon against the defendant in error, subsequent proceedings in that court under a foreclosure decree are averred in the filing of a petition by the defendant in error, as purchaser under the decree, and an order of the court granting the prayer of the petition; each entitled in that cause and reading as follows:

156 F.—47

First. "This petition of the Grand Trunk Western Railway Company respectfully shows:

"(1) That it is a corporation existing under and by virtue of the laws of the states of Michigan and Indiana, created as hereinafter stated; that it is now the owner of the entire railroad and property formerly owned by the Chicago & Grand Trunk Railway Company—one of the defendants in the above-entitled cause—which were embraced in and sold under and pursuant to the decree in said cause; and that it derived its said title through the following deeds of conveyance: (a) By separate deeds for each of the states of Michigan, Indiana, and Illinois, of the portion of said railroad and property lying and being in each of said states, by Walter S. Harsha, special master commissioner, to Charles M. Hays and Elijah W. Meddaugh, the purchasers at the sale, made pursuant to said decree, in which deeds said complainant, the Mercantile Trust Company (of New York), trustee, and said defendants, the Chicago & Grand Trunk Railway Company, the Union Trust Company (of Detroit), trustee, and Hugh Paton, trustee, joined. (b) By separate deeds of conveyance, for each of said states, by said Hays and Meddaugh, of that portion of said railroad and property lying and being in the state of Michigan to the Port Huron & Indiana Railway Company; of that portion thereof lying and being in the state of Indiana, to the Indiana & Illinois Railway Company; and of that portion thereof lying and being in the state of Illinois, to the Chicago Lake County Railway Company—each of said railway companies having been organized by said Hays and Meddaugh, pursuant to statutory provisions, for the express purpose of accepting such conveyances.

"(2) That subsequently said Port Huron & Indiana Railway Company and said Indiana & Illinois Railway Company were consolidated, and thereby your petitioner was duly created, pursuant to the statutes of the states of Michigan and Indiana. Afterward your petitioner, having become the owner of the entire capital stock of said Chicago Lake County Railway Company, purchased that part of said railroad and property lying and being in the state of Illinois, and received a deed thereof from said Chicago Lake County Railway Company.

"(3) That by the laws of the states of Michigan and Indiana, under and pursuant to which it was created as aforesaid, your petitioner is expressly made liable for all the debts and obligations of its constituent members, to wit: Said Port Huron & Indiana Railway Company and said Indiana & Illinois Railway Company; and by the laws of the state of Illinois, under and pursuant to which it acquired that part of said railroad and property lying in said state of Illinois as aforesaid, your petitioner is expressly made liable for all the debts and obligations of said Chicago Lake County Railway Company.

"(4) That in each of the several deeds through which your petitioner derived its title to said railroad and property as aforesaid, it is provided, in substance, that the conveyance is expressly made subject to the obligations by said decree imposed upon the purchasers of said railroad and property at said sale thereof by said special master commissioner, and upon their successors and assigns.

"Copies of each of said several deeds of conveyance which constitute petitioner's chain of title to said railroad and property are hereto attached.

"(5) It is provided in said decree, under and by virtue of which said railroad and property were sold to said Hays and Meddaugh as aforesaid, as follows, viz.: 'It is further ordered, adjudged, and decreed that the purchaser or purchasers of said railroad franchises and other property at such sale shall, as part of the consideration and in addition to the price bid, pay and discharge any and all receivers' indebtedness and liabilities that shall not have been paid by the receivers, and any and all claims heretofore filed in this cause, or that may be hereafter filed within four calendar months from the date of entering this decree, but only when and as the court shall allow such claims and adjudge the same to be a lien prior to the mortgage foreclosed in this suit; and shall pay all costs of court, fees of clerks and masters, and any sums awarded by the court to the parties to this suit, and their counsel, or to the receivers in this cause; and, furthermore, shall pay all costs and expenses involved in and incident to the suits instituted in said Circuit Courts of the United States for the District of Indiana and for the Northern District of

Illinois in foreclosure of said mortgage of April 10, 1880, and shall abide by and comply with and perform all other orders and decrees that may be made by this court or by said Circuit Courts of the United States for the District of Indiana and for the Northern District of Illinois, or either of them, in the said cases therein pending. Any such purchaser or purchasers, and his or their successors and assigns, shall have the right to enter his or their appearance in this court, or any other court, and he or they, or any of the parties to this suit, shall have the right to contest any claim, demand, and allowance existing at the time of the sale and then undetermined, and any claim or demand which may arise or be presented thereafter, which would be payable by such purchaser or purchasers, his or their successors or assigns, or which would be chargeable against the property purchased, in addition to the amount bid by such purchaser or purchasers at the sale, and may appeal from any decision relating to any such claim, demand or allowance.'

"(6) Your petitioner hereby admits itself to be the successor and assigns of said Hays and Meddaugh, within the intent and meaning of said decree, and that it is legally liable for all the obligations imposed by said decree upon the purchasers of said railroad and property at the sale thereunder as aforesaid, and is amenable to all orders and decrees of this court, of the Circuit Court of the United States for the District of Indiana, or the Circuit Court of the United States for the Northern District of Illinois, that may be made in respect thereof; and it hereby submits itself to the jurisdiction of this court and of said courts in respect of any such orders or decrees.

"(7) That your petitioner is desirous of securing immediate possession of said railroad and property, and, to that end, prays an order of the court directing the receivers to at once turn over and deliver the same to your petitioner, together with any money balances, credits, etc., growing out of or connected with the operation of said railroad and property by said receivers, that may be in their possession and control; your petitioner hereby signifying its willingness to accept and assume all outstanding obligations and liabilities of said receivers, and hereby undertaking to fully satisfy and discharge the same as they shall from time to time, within the terms of said decree in that behalf, be allowed and ordered paid by this court, by the Circuit Court of the United States for the District of Indiana, or by the Circuit Court of the United States for the Northern District of Illinois. And your petitioner is willing and hereby agrees to accept the full and final accounting of said receivers, as such accounts shall be rendered by them to petitioner, and consents to the final discharge of said receivers and the cancellation of their bonds as such receivers. Your petitioner prays that it may be permitted to enter its appearance, by its solicitor or attorney, in this cause and in the causes pending in the two other courts aforesaid, to the end that it may be heard respecting any claims that may now be pending or may hereafter be presented either against said Chicago & Grand Trunk Railway Company or against said receivers pursuant to the provisions of said decree."

Second. Whereupon the following order was entered:

"The foregoing petition being duly considered, and all parties to the suit, by their respective solicitors of record, consenting, it is hereby ordered: That the prayers of the petition be and hereby are granted. The receivers, E. W. Meddaugh and H. B. Joy, are hereby directed to turn over and deliver to said petitioner, on the 1st day of December, 1900, all of the railroad, property, money, accounts, and effects as prayed, and the said receivers are hereby relieved of any further accounting to this court for the administration of their receivership, and their bonds for the faithful performance of the duties of said receivership are hereby canceled, and the surety on said bonds hereby released."

It is then averred "that in pursuance of said last-mentioned order, entered as aforesaid, said railroad and railroad property and all the improvements and betterments made thereon by said receivers during said receivership, and all money balances, credits, etc., and all other property in the possession of said receivers, as aforesaid, were turned over and delivered to the said defendant, the Grand Trunk Western Railway Company." And that "by means of the premises and the petition, orders and decrees, as aforesaid, the said defendant, the Grand Trunk Western Railway Company, became and still is liable to pay to the plaintiff any and all damages sustained by him through

the negligence, as aforesaid, of said receivers"; that, though often requested, the defendant has not paid his said damages, but refused to pay the same to his damage of $50,000, "and therefore he brings his suit."

The demurrer to this amended declaration is in the form of a general demurrer "for want of a sufficient declaration in this behalf," with seven specifications of cause, which are sufficiently referred to in the opinion.

John A. Brown, for plaintiff in error.

George W. Kretzinger, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The declaration avers an injury suffered by the plaintiff in error, while engaged in the service of the receivers, under circumstances which would charge the receivers with liability, upon due proof in a suit against them, prosecuted during the term of receivership. Suit was not commenced, however, until after sale of the res under a foreclosure decree, delivery to the defendant in error through a purchase thereunder, and discharge of the receivers, as averred in the amended declaration in question. The foreclosure proceedings referred to were in the Circuit Court of the United States for the Eastern District of Michigan, where the receivers were appointed, with ancillary proceedings and appointment in the Northern District of Illinois and elsewhere; and the plaintiff in error brought the present action, as trespass on the case, in the superior court of Cook county, Ill., against the receivers so appointed (and acting when the injury occurred), impleaded with T. C. Austin Manufacturing Company and Grand Trunk Railway Company, as defendants. More than two years elapsed before the defendant in error, Grand Trunk Western Railway, was impleaded as defendant; and subsequently there was a discontinuance as to the other defendants, with the defendant in error retained as sole defendant. Removal to the trial court ensued, and the declaration, as finally amended to charge liability thereupon, was challenged by demurrer. The inquiry whether it states a cause of action against the defendant in error is the only serious question for review, and its solution is not free from difficulty under the authorities.

Were the question of liability one arising in equity, in proper forum upon timely application, no difficulty would appear in framing the issues and granting the relief which equity affords upon proof of the facts, unless barred by limitation or laches. Instead of such course, with remedy sought at law, not only is the case governed by the rigid rules of that forum, but it has become complicated through mistakes in procedure and failure to bring in proper parties and charge liability within a period of limitation which may bar redress for the alleged cause of action in any forum. Upon demurrer, however, the question of limitation, for which the defendant in error contends, cannot arise under the common-law rules upheld in Illinois (Gebhart v. Adams, 23 Ill. 397, 76 Am. Dec. 702; Gunton v. Hughes, 181 Ill. 132, 134, 54 N. E. 895, 1 Chitty on Plead. [16th Am. Ed.] 506, 526), and that objection must be disregarded upon review of the ruling against the sufficiency of the declaration.

The matter for which recovery is sought is the injury alleged to be

caused by negligence on the part of the receivers in their operation of the railroad property in custodia legis. As the defendant in error had no part or interest in such operation, nor existing interest even in the property, it was plainly not answerable for the alleged negligence when this cause of action accrued; but liability is predicated upon the further averments of subsequent transactions in the purchase of the property, under decrees in the foreclosure proceedings, whereby it assumed obligations incurred by the receivers. In other words, with a cause of action set up against the receivers—neither acknowledged by them nor sued upon within the terms of receivership—recovery is sought against the purchaser alone, as for an obligation thus assumed through the terms of purchase and circumstances of succession in estate.

The general doctrine which controls the enforcement of remedies in the federal forum has frequently been declared by the Supreme Court, as preserving the distinctions between law and equity, under the constitutional grant of judicial powers, so that "the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit," in conformity with such state practice. Bennett v. Butterworth, 11 How. 669, 674, 13 L. Ed. 859; 5 Notes U. S. Rep. 60; Lindsay v. Shreveport Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505. With no averments to charge direct or personal common-law liability against the defendant in error, these considerations set up for recovery, through purchase and succession to the railroad property—at least aside from the express assumption of receivership obligations—are not legal obligations at the common law; and as equitable obligations alone they are barred from enforcement at law, under the above-stated doctrine. So, in reference to the alleged assumption of liability, without privity between these parties, the general rule upheld in National Bank v. Grand Lodge, 98 U. S. 123, 125, 25 L. Ed. 75, and Keller v. Ashford, 133 U. S. 610, 620, 10 Sup. Ct. 494, 33 L. Ed. 667, would stand in the way of such enforcement, unless the subsequent opinions in Willard v. Wood, 135 U. S. 309, 313, 10 Sup. Ct. 831, 34 L. Ed. 210, and Union Life Insurance Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, 36 L. Ed. 118, are applicable to modify the rule.

Under the first-mentioned doctrine, it has long been the rule of the federal jurisdiction—both before and since the general enactment of 1872 (Act 1872, c. 255, § 5, 17 Stat. 197; section 914, Rev. St. [1 U. S. Comp. St. 1901, p. 684]), adopting "the practice, pleadings, and forms and modes of proceeding" of the states respectively—in common-law civil cases, that equitable claims and defenses are not enforceable at law in the federal court, notwithstanding such authorization in the courts of the state. Lindsay v. Shreveport Bank, supra. Without plain sanction, either for departure from that rule or for the exercise of jurisdiction at law under conditions and in precedents applicable to these averments, the present suit would not appear to be maintainable, and demurrer to the declaration was rightly sustained. On the other hand, if the later decisions of the Supreme Court establish a rule—whether by way of modification of such doctrine or other-

wise—which authorizes the remedy thus sought, they are to be observed as controlling.

Expressions in the opinions in the above-mentioned cases of Willard v. Wood and Union Life Insurance Co. v. Hanford may not appear in harmony with the view that no claim purely equitable can be enforced at law under the sanction of the state practice. In each of these cases, speaking in reference to the enforcement by a mortgagee of a covenant between his mortgagor and a grantee of the latter for payment of the mortgage indebtedness, it is stated (without qualification) that:

"The question whether the remedy of the mortgagee against the grantee is at law and in his own right, or in equity and in the right of the mortgagor only, is * * * to be determined by the law of the place where the suit is brought."

In neither case, however, can these remarks be accepted as decisive of the present inquiry, under our understanding of the issues there involved. The issue in Willard v. Wood was whether such obligation was enforceable in a suit at law by the mortgagee against the grantee, without privity between the parties; and the denial rests, as stated in the opinion, on the authority of National Bank v. Grand Lodge, supra, and Keller v. Ashford, supra, upholding the common-law rule. The remarks upon remedy, as "governed by the lex fori, the law of the District of Columbia, where the action was brought," were made arguendo, in answer to the contention that the plaintiff was entitled to the benefit of the rule in New York (where the property and conveyance were located), which authorized such suit "either in equity or at law." Whether there was any provision or rule in New York fixing the nature of the obligation was not there considered. That the rule of practice referred to could not fix the form of remedy in another forum was decided in conformity with the citations in the opinion, and the comment must be read in that view. In Union Life Insurance Co. v. Hanford, the suit was in equity for foreclosure of a mortgage, in the federal court, sitting in Illinois, and issue arose upon claim of a deficiency judgment against the mortgagor. The defense was that his personal liability was discharged by an extension of time granted by the mortgagee to a grantee of the mortgagor who had assumed payment of the debt; and, the fact being undisputed, the sole test of liability was whether the grantee became directly and primarily obligated in favor of the mortgagee, so that his relation to the mortgagor became that of principal with the latter as mere surety for the debt. Under the law of Illinois, the opinion states that such was the well-established nature of the liability; and, thus applying the law of the contract, the defense was sustained. By way of premise for this conclusion, the opinion refers to the "remedy of the mortgagee against the grantee" as determined by the law of the place where suit is brought (in the language above quoted), with the remark, "as was adjudged in Willard v. Wood." But the decision, upon our understanding of its import, rests on the interpretation of the agreement in question as creating direct (legal) liability, in conformity with the local law, for which remedy at law was proper.

In the case at bar, however, the equitable features are far more complicated than those involved in either of the above-mentioned decisions. The special nature of the liability incurred for injuries arising through negligent operation, under a receivership, has been fruitful of much discussion in judicial opinions and text-books; but no review of the various theories is needful for the present inquiry, as these propositions are well settled in the federal courts: (a) The receiver is not chargeable with personal liability for such injuries, not due to his personal negligence or conduct, but is chargeable as the representative of the property and funds in his custody within the limits of such property and of his possession or control. (b) "Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands." McNulta v. Lochridge, 141 U. S. 327, 332, 12 Sup. Ct. 11, 35 L. Ed. 796. (c) Prior to the act of Congress of 1887 (Act March 3, 1887, c. 373, 24 Stat. 554, 1 Comp. St. 1901, p. 582), the receiver could not be sued without leave of the court having custody of the res, and all claims were subject to adjudication in such court. Davis v. Gray, 16 Wall. 203, 218, 21 L. Ed. 447; 7 Notes U. S. Rep. 980. In other words, no liability arises which is enforceable at law, except as authorized either under the terms of this statute or by the court administering the property. (d) With the termination of the receivership and transfer of property and funds, as disclosed in the declaration, the suit at law was not maintainable against the receivers. McNulta v. Lochridge, supra, and 12 Notes U. S. Rep. 30; Beach on Receivers (Alderson) §§ 720, 725; Gluck & Becker on Receivers, § 82; 2 Elliott on Railroads, § 587; Archambeau v. Platt, 173 Mass. 249, 251, 53 N. E. 816.

The defendant in error, as purchaser of the property and successor to the fund, having no part in the alleged tort, if chargeable for the damages, is chargeable alone through liability assumed in the purchase and circumstances of succession; and then only, under the facts averred, in conformity with the principles of equity, if governed by the general doctrines above referred to. In such aspect, however, the case is, as we believe, directly within and ruled by the decision of the Supreme Court in Texas & Pacific Railway v. Bloom, 164 U. S. 636, 643, 17 Sup. Ct. 216, 41 L. Ed. 580, supplementing the prior decision in Texas & Pacific Railway v. Johnson, 151 U. S. 81, 99, 14 Sup. Ct. 250, 38 L. Ed. 81. While the earlier case of Johnson arose upon writ of error to the Supreme Court of Texas, and the personal judgment against the corporation succeeding the receivership was affirmed upon the ground that the question of liability was one "of general law and for the state court to pass upon," the Bloom Case arose in the Circuit Court of the United States, and was brought from the Circuit Court of Appeals on error to the Supreme Court. Both cases were identical in the circumstances upon which the liability of the corporation was predicated, and the opinion (151 U. S. 99, 14 Sup. Ct. 250, 38 L. Ed. 81) affirming the Johnson judgment thus summarizes the rule adopted by the state court for charging personal liability:

"In the view of that court, a railway company might be held directly liable when a receiver is appointed in an amicable suit at the instigation of the company and for the company's own purposes, and, these purposes being accomplished, the property is returned to its owner, the rights of no third persons as purchasers intervening, upon the ground that the acts of the receiver might well be regarded as the acts of its own servant, rather than those of an officer of the court, which under such circumstances he would only be sub modo. But as the court did not feel authorized to entertain a conclusion which might carry the implication that this receivership would have been created or continued, although its object had only been to place the property temporarily beyond the reach of creditors until it could be augmented in value by improvements made from earnings under the protection of the court, that rule was not applied in this case. The company was held liable upon the distinct ground that the earnings of the road were subject to the payment of claims for damages, and that as, in this instance, such earnings to an extent far greater than sufficient to pay the plaintiff had been diverted into betterments, of which the company had the benefit, it must respond directly for the claim. This was so by reason of the statute (Laws Tex. 1887, p. 120, c. 131, § 6), and, irrespective of statute, on equitable principles applicable under the facts."

On examination of the statutory provision referred to under the title of "Receivers," which mentions liabilities to be paid by a receiver out of moneys coming into his hands, we find no obligation imposed, either upon receiver or fund, not within the general rules of equity and well recognized as thus chargeable.

The subsequent case of Bloom, brought from the federal court, involved not only the question of liability, upheld in the prior decision when arising in a state court, but the further question of direct enforcement at law in the federal forum. · Error was assigned upon the contention that the alleged cause of action was equitable and furnished no support there for a personal judgment at law; and thus presented, as in the present instance, the main question for review. In overruling this assignment, the opinion recognizes both the equitable nature of the liability there charged and the limited scope of the Johnson decision. It recites, however, the above-quoted review in that opinion of the premises and rule of the Texas decisions, and expressly approves and adopts them, as applicable in the federal court there sitting. In reference to the charge for betterments, the opinion is explicit in approval of direct liability, subject to the right of the company to "have the aid of a court of equity to restrict its liability to that amount," upon showing that the claims exceeded the betterments. We understand that the decision, although not expressly so defined, rests upon this view: That the local law establishes the obligation assumed by the successor, who takes over the property and fund from a receivership with assumption of liabilities, to be one of direct liability, and not merely equitable, for payment of claims chargeable against the fund; and that the direct liability so affixed determines the nature of the cause of action in the federal court, and it becomes enforceable there at law. With the adoption of the direct liability rule of Texas, the remedy may be administered at law, within the settled principles of that jurisdiction; and if question is open as to the bearing or effect of the rule when arising in equity jurisprudence, it is not pertinent on this review.

These decisions are applicable, as we believe, both to the equitable state of facts averred in the present declaration—with their effect

strengthened by the special admission on the part of this defendant in error, in paragraph 6 of its petition for possession of the railroad, "that it is legally liable for all the obligations imposed by said decree"—and to the lex fori, as settled by the Illinois decisions.

As before mentioned, it has long been the established law of Illinois that one person who contracts with another to assume an indebtedness of the latter to a third person becomes directly and primarily liable to such third person, who may sue at law upon the promise (Union Life Insurance Co. v. Hanford, supra, and cases cited) ; and such rule is general, not limited to mortgage indebtedness assumed by a grantee (Eddy v. Roberts, 17 Ill. 505, 508; Thompson v. Dearborn, 107 Ill. 87, 92).

In Bartlett v. Cicero Light Co. (decided in 1898) 177 Ill. 68, 73, 52 N. E. 339, 42 L. R. A. 715, 69 Am. St. Rep. 206, the question of the defendant's liability, in a suit at law, arose under circumstances singularly identical with those stated in the above-cited Texas cases, and the opinion cites and adopts the rulings of the Supreme Court of Texas thereupon, with special reference to Texas & Pacific Ry. Co. v. Johnson, 76 Tex. 421, 13 S. W. 463, 18 Am. St. Rep. 60, which was subsequently affirmed by the Supreme Court of the United States, as above referred to. Not only was direct liability upheld and rested on equitable considerations which would not support such liability under the general doctrine, and in no sense distinguishable in principle from those averred in the present case, but the decision is unmistakably brought within the rulings of the United States Supreme Court in both Texas cases. The opinion is well considered and unanimous. Its doctrine is reaffirmed in subsequent cases (see Knickerbocker v. Benes, 195 Ill. 434, 443, 63 N. E. 174, and its application in Wabash R. R. Co. v. Stewart, 41 Ill. App. 640, to facts like those involved here), and unquestionably settles the law of Illinois, as resting direct and personal liability upon grounds purely equitable under the general rule, and thus establishes the case at bar within the distinction upon which both the Bloom Case and Union Life Insurance Co. v. Hanford, supra, are understood to authorize recovery at law, namely, enforcement of the direct liability created by the state law out of these equities, with no blending of procedure in law and equity thereby recognized.

In Thompson v. Northern Pac. Ry. Co., 93 Fed. 384, 35 C. C. A. 357, like suit at law was upheld against the purchaser alone, upon similar state of facts, with the exception that leave to sue was granted upon the equity side of the court, having ancillary jurisdiction of the foreclosure decree under which the sale was made. It was there contended: (1) That the complaint stated no cause of action at law; and (2) that writ of error did not lie, because in reality an equitable proceeding, "although in form an independent action at law." The opinion, however, overrules both contentions, and expressly states that the proceeding was not equitable, but was an action at law, and was thus maintainable upon the obligation assumed by the purchaser. Whether jurisdiction at law rested on the leave so granted, local rule, or otherwise, is not discussed.

The remaining objection of duplicity, assigned in the demurrer, is untenable. The twofold facts averred as grounds of liability, by way of express assumption, and in succession to improvements and betterments made by the receivers, are connected, not independent, and thus state, or tend to state, a single cause of action under the rules of pleading. 1 Chitty on Plead. (16th Am. Ed.) 249; Stephens on Pleadings (3d Am. Ed.) 248, 249.

The judgment of the Circuit Court is not in conformity with the foregoing view, and is reversed accordingly; and the case is remanded, with direction to set aside the judgment and overrule the demurrer to the amended declaration, for further proceedings in conformity with law.