## BETTS v. BISHER.

(Circuit Court of Appeals, Ninth Circuit.   May 4, 1914.)

### No. 2359.

1. COURTS (§ 295*)—FEDERAL COURTS—JURISDICTION—ACTIONS AGAINST RECEIVERS.

Where a receiver of a corporation was appointed by a federal court, an action against the receiver for injuries to an employé was maintainable in such court, though there was no federal question involved nor diversity of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 837; Dec. Dig. § 295.*

Actions by and against receivers of federal courts, see note to J. I. Case Plowworks v. Finks, 26 C. C. A. 49.]

2. RECEIVERS (§ 185*)—ACTIONS AGAINST RECEIVERS—INSTRUCTIONS.

Where a lessee of certain mining properties was appointed receiver thereof in mortgage foreclosure proceedings, after which he operated the property as receiver, accounted for the rents, and made expenditures which he was not authorized to make under the lease, and it also appeared that he accepted the appointment as receiver in lieu of his rights as lessee, and the foreclosure decree contained no recognition of the lease, but provided that the receiver should execute a conveyance of all the property of the corporation and let the purchaser into possession, the court properly refused to charge that, after his appointment as receiver, he operated the mine as lessee.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 371–373; Dec. Dig. § 185.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—NEGLIGENCE—DANGEROUS WORK—QUESTION FOR JURY.

In an action for injuries to a boy 18 years of age, without training or experience, by receiving a shock from a high-voltage wire, evidence that he was placed under an electrician who was employed on the line, and by him permitted to ascend the poles and engage in tying high-voltage wires there, was sufficient to justify submission to the jury of defendant's negligence in permitting plaintiff to engage in such hazardous employment, the lineman being regarded as a vice principal under Employers' Liability Act, Or. (Sess. Laws 1911, p. 16) § 2, providing that the manager, superintendent, foreman, or other person in charge or control of the construction or works or operation or any part thereof shall be held to be the agent of the employer in all suits for damages for death or injury to an employé, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Action by John L. Bisher, Jr., by John L. Bisher, as guardian, against Robert M. Betts, receiver of the Cornucopia Mines Company of Oregon. Judgment for plaintiff, and defendant brings error. Affirmed.

Emmett Callahan and Littlefield & Smith, all of Portland, Or., for plaintiff in error.

Boothe & Richardson and Charles A. Johns, all of Portland, Or., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge. On July 29, 1912, the defendant in error, while engaged in insulating certain electric wires of the electric power plant of the Cornucopia Mines Company, a corporation, sustained serious personal injuries, for which he recovered damages in the court below, against the receiver of such corporation. The parties to the action will be designated herein plaintiff and defendant, as in the court below.

[1] The objection is made that the trial court had no jurisdiction of the action; that the fact that the cause of action was against a receiver appointed by the court below, and was based upon the alleged negligence of the receiver in managing the property of the receivership, was not sufficient to confer jurisdiction where there was no diversity of citizenship and no federal question involved. In White v. Ewing, 159 U. S. 36, 39, 15 Sup. Ct. 1019 (40 L. Ed. 67), the court said that a suit against a receiver—

"in the course of the winding up of such corporation, whether for the collection of its assets or for the defense of its property rights, must be regarded as ancillary to the main suit, and as cognizable in the Circuit Court, regardless either of the citizenship of the parties, or of the amount in controversy."

By this, it was not meant that the jurisdiction of actions against the receiver in the court in which he was appointed is confined to actions for the recovery of debts which existed at the time when he was appointed, and as incidental to the distribution of the property in the hands of the receiver, for in McNulta v. Lochridge, 141 U. S. 327, 332, 12 Sup. Ct. 13 (35 L. Ed. 796), the court said:

"Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands."

The doctrine of these decisions was applied in Gray v. Grand Trunk Western Ry. Co., 156 Fed. 736, 84 C. C. A. 392; Hanlon v. Smith (C. C.) 175 Fed. 192, and Smith v. Jones Lumber & Mercantile Co. (D. C.) 200 Fed. 647. The rule established by those and other decisions is that, while actions against receivers may be brought in the state courts, they may also be brought in the court in which the receiver was appointed, and that, notwithstanding that no federal question is involved, and there is no diversity of citizenship, those courts have

jurisdiction upon the ground that the actions are ancillary to the original suit, and that the judgments recoverable therein are payable from the property or funds in the course of administration. Gableman v. Peoria, etc., Ry. Co., 179 U. S. 335–342, 21 Sup. Ct. 171, 45 L. Ed. 220.

[2] One of the defenses pleaded in the answer was that at the time of the accident the property upon which the plaintiff was working when he was injured was operated by the defendant, not as receiver, but as lessee, and that it was as a lessee that he employed the plaintiff. On November 9, 1911, the Cornucopia Mines Company executed to Betts a lease of all its mining properties, including the electric power plant upon which the plaintiff was working when he was injured. The term of the lease was one year, and the lessor was to receive as rental 90 per cent. of the net returns of all ore extracted from the mining property. On December 5, 1911, while Betts was in possession under the lease, a suit was brought by the Hamilton Trust Company to foreclose a mortgage on the mining property. In that suit Betts was, on January 2, 1912, appointed receiver, and in the order under which he qualified he was directed to take immediate possession of the property of the mining company—

"and to continue the operation of said mining property, and every part and portion thereof, as heretofore operated, and to preserve the said property in proper condition and keep the same in repair and to employ such persons and make such payments and disbursements as may be needful and proper in doing so."

Betts was not made a party defendant to the suit, nor was the fact of his lease mentioned in the bill, but in the affidavit upon which the receiver was appointed, the lease was referred to, and it was stated that Betts was in possession and was operating and developing the mining properties under that lease. The electric power plant was a part of the property covered by the lease and by the mortgage, and it was being used in the operation of the mining property at the time when the plaintiff was injured. The defendant testified that at that time he was operating the mine and the power plant as lessee and not as receiver. But there was evidence tending to indicate that he was operating the property as receiver. In his monthly reports as receiver he made return of all moneys received by him in the operation of the mine during the time of his receivership, the total amount of which was $71,681.27, which was less than his total disbursements by $781.81. His reports showed that during that period, as part of the expenses, he paid himself a salary of $350 a month as receiver; that he paid for legal services $100 a month, and that out of the sums received he expended $12,714.26 for betterments and improvements of the property, one item of which was a cyanide plant, costing $3,000. The lease gave him no authority to make those expenditures.

The defendant assigns as error the refusal of the court to instruct the jury that upon the evidence the defendant was operating the mine as lessee, and to the denial of the defendant's motion for an instructed verdict in its favor, upon the ground, among other grounds stated, that the defendant as lessee was operating the mine at the time of the acci-

dent. In view of the evidence, we think the court committed no error in refusing the requested instruction, and in submitting to the jury, as it did, the question whether the defendant was operating the mining property as receiver or as lessee. The court instructed the jury that the defendant might have been the receiver and the lessee at the same time; that he could act as lessee and also as receiver without one duty being inconsistent with the other; that if appointed receiver, he could take charge of the mine as receiver, the same to be operated subject to the leasehold interest in the premises. Certain features of the record tend to show that Betts accepted the appointment of receiver in lieu of his rights as lessee, and that the lease was, by all parties, deemed set aside during the receivership. One of his attorneys, who appears in this action, made the affidavit for the complainant in the bill on which the receiver was appointed, and therein set forth that it was necessary that the mines should continue in operation; that if they were closed down, great injury and loss would result, and the stamp mill and electric power plant and other machinery would deteriorate in value. The order appointing the receiver and directing his action as such is in its terms inconsistent with the continuation of the lease. The order directed him to pay the necessary expenses incident to the operation of said property out of the moneys that should come into his hands as receiver, from the operation thereof; and to hold the remainder, if any there should be, subject to the order of the court. And the decree of foreclosure of April 30, 1912, contained no recognition of the lease, for it provided that in addition to the master's deed, Betts as receiver should execute a good and sufficient deed of conveyance "of any and all property of the said company," and that upon the execution and delivery of such conveyances, the purchaser should be let into possession of all the said property.

[3] It is contended that the court erred in refusing to instruct the jury to return a verdict for the defendant on the ground that there was no evidence of his negligence; that the testimony showed that the injury was caused solely by the plaintiff's negligence; that he was a volunteer in doing the work in which he was engaged when injured; and that the defendant owed him no duty. To this it is to be said that there was evidence that the plaintiff, a boy of 18 years of age, was working as a common laborer for the defendant, and that he was instructed by the defendant's general foreman to report to Buxton, the chief electrician, who wanted him to work on the line; that Buxton told him to help Harbert, who was a lineman and electrician and was engaged in removing glass insulators from three wires which were carried on crosspieces on poles 25 feet from the ground, and in substituting porcelain insulators for the glass insulators so as to permit an increase of the voltage from 2,300 to 6,600 volts; that the plaintiff was instructed to assist the lineman, and was told that the lineman would tell him what to do; that at first the plaintiff carried the tools along from pole to pole, and that Harbert then told him to come up on the poles and assit him in fixing the wires; that the plaintiff climbed the poles with climbers, and Harbert instructed him to fix one side of each wire, and that he, Harbert, would afterwards fix the other side; that they worked for a day or two in that way, and then, as the

plaintiff testified, Harbert, finding that it was hard for one man standing up there so long, said:

" 'We will both come up at the same time,' he says, 'one can wrap one end of the tie wire while the other wraps the other.' He said, 'We can do it quicker,' and he says, 'We can watch each other at the same time,' and he said, 'Maybe won't get no shock if we watch each other. Maybe it will make it safer.' "

While the plaintiff and Harbert were standing on opposite sides of a pole supported by their climbers, and while Harbert had one end of the middle tie wire unwrapped, the plaintiff unwrapped his end, and took the middle wire in one hand, under the instructions of Harbert, to lift it over the pole so as to keep it further away and prevent its contact with the other wire, the injury occurred. The plaintiff testified:

"I just started to lift up the middle wire, and that is the last I remember."

The plaintiff could not explain how the accident happened, nor did Harbert see exactly how it occurred, but it is very plain from the evidence that while the plaintiff was lifting the wire with one hand, he touched another wire with the other hand. Harbert testified that at the time of the accident the plaintiff was standing on the pole and was leaning—

"with his left arm ahold of this wire just as a rest, and when I seen him, that hand was just thrown up and hit right across the wrist. The contact on the right hand was across the wrist; might have been further up."

Both the plaintiff's hands were seriously injured, and one was amputated.

The complaint alleged negligence on the part of the defendant: (1) In failing to insulate the wires; (2) in not leaving sufficient space between the wires; (3) in placing a dead wire with the live wires; (4) in failing to designate, by colors or otherwise, the arms and poles upon which the live wires were located; (5) in failing to supply employés with proper tools and instruments, and to give them proper instructions and directions; (6) in directing the plaintiff to do and perform his work in an unsafe and dangerous place while he was ignorant of the danger and without instructing him thereof; (7) in directing the plaintiff to climb and work upon poles without furnishing him with a ladder or proper appliances; (8) in failing to turn off the live electric current while the work was being done. The defendant in its answer denied negligence, and denied that the plaintiff was employed to work upon the wires, and alleged his contributory negligence. The action was founded on the Oregon Employers' Liability Act (Session Laws 1911, p. 16). That act requires all persons engaged in the manufacture and transmission of electricity of a dangerous voltage to provide full and complete insulation at all points where employés are liable to come in contact with the wire; that dead wires shall not be mingled with live wires, nor strung upon the same support; that the arms or supports bearing live wires shall be specially designated by a color or other designation; that live electrical wires carrying a dangerous voltage shall be strung at such distances from the poles or sup-

ports as to permit repairmen to engage freely in their work without danger of shock, and it provides:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employés or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Section 2 provides:

"The manager, superintendent, foreman or other person in charge or control, of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employé."

Passing the other grounds of negligence alleged in the plaintiff's complaint, we entertain no doubt that there was sufficient evidence to go to the jury on the question of the defendant's negligence, in permitting a boy of 18 years of age, without training or experience, to do the work of a lineman, in so hazardous an occupation as moving uninsulated live wires carrying 2,300 volts. The work was extremely dangerous, and in its performance extreme caution and care, as well as experience, were required to avoid injury. The plaintiff's only support on the pole were climbers or spurs, and, while lifting the wire, which it is testified would weigh 40 or 50 pounds, if the support of either foot gave way, a boy of his age might naturally grasp any wire within reach to avoid falling. It is true that Buxton, the electrician, denied that he instructed the plaintiff to work on the poles, but it is not denied that he directed him to do what Harbert should tell him to do, and Harbert admitted that the plaintiff helped him on the wires. "He came up there, and I let him finish one end there on the wire." Under the Employers' Liability Act, there can be no question that Harbert, who had control of that work, was the agent of the employer. The court in instructing the jury submitted to their decision the question whether the plaintiff was employed to work upon the ground, and charged them that if they found that he ascended the poles voluntarily, and attempted to engage in work there, he would be a volunteer, and that the defendant would not be liable for his injuries, and submitted also to the jury the question whether or not Harbert had authority in the premises to direct the plaintiff to go upon the poles and assist in fixing the wires.

There are some assignments of error to the admission of testimony, but in none of the rulings do we find reversible error, nor do we find that the court erred in refusing certain instructions requested by the defendant. The instructions given covered carefully and correctly all the questions involved in the action.

The judgment is affirmed.