HAMILTON TRUST CO. v. CORNUCOPIA MINES CO. OF OREGON et al.
(BISHER, Intervener).

(Circuit Court of Appeals, Ninth Circuit.   May 10, 1915.)

No. 2526.

1. APPEAL AND ERROR ⬥150—PARTIES ENTITLED TO APPEAL.
    In a suit by the trustee named in a corporate mortgage to foreclose
such mortgage, a receiver was appointed to operate the property pen-
dente lite, and the property was ordered sold and was sold to a trustee
for the bondholders, who, in payment of the amount due, surrendered
the bonds, which were thereupon canceled. The trustee was fully paid
and its cause of action fully and completely discharged of record. An
employé of the receiver obtained a judgment for personal injuries, in-
tervened in the foreclosure suit, and procured a decree adjudging that
he had a lien on the property for the amount of his judgment. A new
corporation, to which the purchaser conveyed, was not a party to the
proceedings and had not asked to be made a party, and the mortgage
trustee did not represent it.  Held, that such trustee had no appealable
interest in the controversy, and an appeal by it would be dismissed, as
it had parted with whatever rights it had in the property and could not
be prejudiced by subsequent proceedings, and it was not interested in
the reversal of the decree to avoid liability for a deficiency in the funds
of the receivership to pay the judgment, as it was not liable for any
such deficiency.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 934–
946; Dec. Dig. ⬥150.]
2. APPEAL AND ERROR ⬥150—PARTIES ENTITLED TO APPEAL.
    Every person desiring to appeal from a decree must be interested in
in the subject-matter of the litigation, and the interest must be immedi-
ate and pecuniary and not a remote consequence of the judgment and
must be substantial; a merely nominal party to the action not having
a right to appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§
934–946; Dec. Dig. ⬥150.]
3. APPEAL AND ERROR ⬥150—PARTIES ENTITLED TO APPEAL.
    The interest of a party seeking to appeal must be subsisting, and
though a party may have an appealable interest at the commencement
of a suit, if that interest has terminated before the entry of the judg-
ment or decree sought to be appealed from, he cannot appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 934–
946; Dec. Dig. ⬥150.]
4. APPEAL AND ERROR ⬥150—PARTIES ENTITLED TO APPEAL.
    The right or title which a party seeking to appeal seeks to establish
must be his own and not that of a third person.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 934–
946; Dec. Dig. ⬥150.]
5. MORTGAGES ⬥551—FORECLOSURE OF CORPORATE MORTGAGE—EXPENSES OF
    RECEIVERSHIP—LIABILITY OF PROPERTY.
    In a suit to foreclose a corporate mortgage, a receiver was appointed
by an order which authorized him to operate the mortgaged property
and from the moneys coming into his hands to pay the necessary ex-
penses incident to such operation. The foreclosure decree provided for
the payment out of the proceeds of sale of the expenses of the receiver-
ship prior to the payment of the amount due the bondholders. The pur-
chaser at the sale paid the purchase price by the surrender of bonds
without the payment into court of any funds for the adjustment or pay-

ment of the expenses of the receivership. *Held* that, such expenses not having been adjusted or paid at the time of the conveyance, the purchaser took the property burdened with whatever deficiency there might be in such expenses.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1578, 1579; Dec. Dig. ☞551.]

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Action by the Hamilton Trust Company against the Cornucopia Mines Company of Oregon and others, in which John L. Bisher, Jr., by John L. Bisher, his guardian ad litem, intervened. From a judgment in favor of the intervener, complainant and the defendants appeal. Appeal dismissed.

Emmett Callahan and Wood, Montague & Hunt, all of Portland, Or., for appellants.

Boothe & Richardson and Charles A. Johns, all of Portland, Or., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. On April 1, 1905, the Cornucopia Mines Company of Oregon, hereinafter referred to as the mines company, issued $300,000 in first mortgage bonds, with interest at 6 per cent. per annum, interest payable semiannually. To secure the bonds, the mines company made and executed a first mortgage upon certain particularly described mines and other property of the company, and named the Hamilton Trust Company, of Brooklyn, N. Y., hereinafter called the trust company, as trustee. The bonds were sold, and when they became due and payable on April 1, 1911, the mines company made default in payment of the principal sum of $300,000, and likewise defaulted in the payment of the interest on the bonds in the sum of $99,000. On December 5, 1911, the trust company filed its bill of complaint in the United States Circuit Court for the District of Oregon against the mines company and other defendants to foreclose the mortgage. In the complaint the lands and other property of the mines company were particularly described in detail. Service having been had upon the mines company and the other defendants, C. E. S. Wood, one of the attorneys for the complainant, moved the court for the appointment of a receiver, based upon the bill of complaint and the affidavit of Emmett Callahan, who for eight years had been the general agent and attorney for the mines company. In this affidavit it was alleged:

"That it is necessary that said mines should continue in operation and development; that, if the said mines were closed down and ceased to be operated and developed, great irreparable injury and loss would occur by said mines being closed down and not operated; that, if said mines are not continued in operation and development, the stamp mill, electric power plant, engines, pumps, and other machinery will greatly deteriorate in value and loss; that the tunnels, shafts, winzes, stopes, and other underground openings and workings of said Cornucopia mining claims and mines would cave in and be greatly damaged and great loss follow by the action of the elements

and flooding of said openings in said mines and mining claims filling up with water deteriorating, destroying, and damaging said mines and mining claims, its buildings and operating plants, in a reasonably estimated sum of at least from $40,000 to $100,000."

Upon this showing the court, on December 21, 1911, appointed Robert M. Betts receiver of the real and personal property of the mines company, with authority to continue the operation of said mining and other property, and every part and portion thereof, as theretofore operated, and to preserve the said property in proper condition and keep the same in repair and to employ such persons and make such payments and disbursements as might be needful and proper in doing so. It was further ordered:

"That, out of the moneys that shall come into the hands of said receiver from the operation of said property or otherwise, he shall pay the necessary expenses incident to the operation of said property, and hold the remainder, if any there be, subject to the order of the court."

On January 2, 1912, Betts qualified as such receiver and took possession of the property and proceeded to operate the same as directed by the court. The mines company, on January 22, 1912, filed its demurrer to the bill of complaint, which demurrer was by the court on February 19, 1912, overruled, and, the mines company refusing to plead further, the court ordered that the bill of the plaintiff be taken as confessed against the mines company and the other defendants. A final decree of foreclosure and sale was made and entered in favor of the trust company and against the mines company and the other defendants on April 30, 1912. The decree provided that the trust company have and recover the sum of $422,940 and interest, as therein provided, and the further sum of $10,000 as attorneys' fees, together with its costs and disbursements to be taxed, and that the mortgaged property described in the bill of complaint should be sold under the direction of a special master appointed by the court. It was further provided:

"That the purchaser or purchasers of said mortgaged property at such sale shall be entitled to use and apply in making payment of the purchase price any of the outstanding bonds secured by said mortgage, as therein provided, but a sufficient portion of the purchase price shall be paid in cash to provide funds for payment of all costs and expenses incurred herein, and that the master return the cash proceeds of said sale to the clerk of this court, and that the same be paid to the clerk of this court, and, upon the completion and confirmation by this court of the sale made under and in pursuance of this decree, the said clerk of this court shall pay out such moneys as follows: (1) The expenses of the sale of said property. (2) The expenses of the receivership herein. (3) The costs of this suit. (4) Complainant's attorneys' fees. (5) The taxes and other expenses incurred and paid pursuant to the provisions of said mortgage. (6) All amounts due or to become due upon the bonds secured by said mortgage, and, in case such proceeds shall be insufficient to pay in full the whole amount of principal and interest so due and unpaid on such bonds, then the proceeds shall be applied ratably upon the whole amount due according to the aggregate thereof, without preference or priority of any part over any other part thereof. (7) The remainder, if any, to respondent the Cornucopia Mines Company of Oregon, its successors and assigns."

The sale took place, as provided in the decree, on the 29th day of June, 1912, and the mortgaged premises were sold by the special mas-

ter to C. E. S. Wood, as trustee for the bondholders, for the sum of $432,000. Thereupon Wood, as such trustee, delivered to the special master the first mortgage bonds described in the complaint, amounting to the sum of $300,000 principal and $136,000 interest, a total sum of $436,000. The master received the bonds with the accrued interest in full payment and satisfaction of the bid of said Wood and as liquidation of the indebtedness of the mines company, and thereupon delivered to said Wood a certificate of sale of the property described in the complaint. On the 5th day of July, 1912, the special master made his report of the sale to the court, and on the 6th day of August, 1912, the complainant made and filed its motion for confirmation of such sale, and on said date the court confirmed and approved such sale. On the 30th day of August, 1912, Robert M. Betts, as receiver, prepared and filed his report as such receiver, and asked to be discharged, but it does not appear that the report has ever been approved or the receiver discharged. The order confirming the sale provided that if no redemption of said properties or any of them be had, or other proceedings in the nature of a stay, the special master should on the expiration of the redemption period, to wit, 60 days from date, convey to said C. E. S. Wood, trustee, by the usual master's deed, in due form, all of the properties of the Cornucopia Mines Company. No redemption being made, the special master, on October 7, 1912, made and executed his deed conveying the property to C. E. S. Wood, and on the same date the said Wood made and executed his deed conveying said property to the Cornucopia Mines Company of New York.

On the 29th day of July, 1912, John L. Bisher, Jr., a minor, while in the employ of the receiver, Robert M. Betts, sustained certain personal injuries alleged to have been caused by the negligence of said receiver. Thereupon Bisher applied to the United States District Court (the successor of the United States Circuit Court) for the appointment of a guardian ad litem to institute legal proceedings in his behalf to recover damages from Robert M. Betts, as receiver of the mines company. Upon the showing made, the court appointed John L. Bisher guardian ad litem of said John L. Bisher, Jr., and authorized said guardian to institute and carry on legal proceedings against the receiver of the mines company and against the said corporation to recover damages for the injuries sustained by said John L. Bisher, Jr. Thereupon, on October 12, 1912, Bisher, as guardian ad litem for John L. Bisher, Jr., commenced in the United States District Court for the District of Oregon an action against the receiver, as authorized by the court, and thereafter, and on April 11, 1913, recovered judgment in said action against such receiver in the sum of $12,500. The action was brought to this court upon a writ of error sued out by the receiver, and the judgment was affirmed. Betts v. Bisher, 213 Fed. 581, 130 C. C. A. 161. After the rendition of the judgment in the trial court, and on May 14, 1913, John L. Bisher, Jr., by his guardian, filed a petition in intervention herein, setting up the proceedings resulting in the judgment in his favor against the receiver, and also the proceedings in the foreclosure suit, and asking, among other things, that the entire property belonging to such corporation and in the hands

of the receiver, as well as that included in the mortgage of the complainant, be subjected to the payment of the intervener's claim, as represented by his said judgment. There was a motion on the part of the mines company to dismiss the petition in intervention, which was denied by the court, and an order was entered that John L. Bisher, Jr., and John L. Bisher, his guardian ad litem, be made parties defendant, and that the receiver show cause why the judgment obtained by the guardian ad litem should not be paid. Such proceedings were thereupon had upon the order to show cause that on December 22, 1913, the court found as a fact that the injuries which the said John L. Bisher, Jr., sustained, and which were the basis of the judgment against the said receiver, were sustained in the operation and development of the property by the receiver under the order of the court appointing him as such. The court further found as a fact that there were no funds in the hands of the receiver with which to pay said judgment or any part thereof, and that, at the time of making the sale of the property, no funds were paid into court or to any person by the bondholders or any other person for the payment or satisfaction of said judgment or any part thereof, and that no provision had been made for the payment or satisfaction of said judgment, and that the terms and conditions of such decree had not been carried out and had not been followed in this: That no funds had been provided or paid into court for the payment or satisfaction of such judgment.

A decree was thereafter, and on July 10, 1914, entered by the court adjudging and declaring a lien in favor of John L. Bisher, as guardian ad litem of John L. Bisher, Jr., for the injuries sustained by the latter on July 29, 1912, while in the employ of the receiver, and the claim based thereon evidenced by the judgment, for the amount thereof and costs and accrued interest thereon, and such lien was declared to be and exist upon any and all of the property mentioned and described in the trust deed or mortgage, and on any and all property thereafter acquired by the mines company or by the receiver thereof, and for the payment and satisfaction of the claim and lien all of said property was seized, and any and all of said property was declared to be subject to said lien and claim, and said lien and claim was declared to be superior and prior in time and right to the lien created by the trust deed or mortgage on any property conveyed to or acquired by the mines company after the trust deed or mortgage, and on any and all property conveyed to or acquired by the receiver of said property. The decree further provided for the sale of the property and for the appointment of a special master to make the sale and apply the proceeds of sale in the manner therein directed. In the findings of fact supporting this decree, the court found that a certain water right appropriation and its amendment, which had been acquired by the receiver during his receivership, had been conveyed by the mines company to the Cornucopia Mines Company of New York, and that certain parcels of real estate had been acquired during such receivership by the mines company, but none of this property was specifically mentioned or described in the trust deed or mortgage executed by the mines company to the trust company.

From the decree in favor of the appellee, an appeal has been taken by the trust company.

[1] The appellee has interposed a motion to dismiss on the ground that the appellant is not a party in interest in this appeal, and in support of the motion points out that the decree in the lower court is not against the trust company, but is a decree in rem against certain property in which the appellant has no interest; that the suit herein was originally brought by the appellant to foreclose a mortgage or deed of trust wherein the appellant had been made a trustee for the benefit of certain bondholders; that the appellant obtained the decree prayed for in the complaint; that all of the property mentioned in the complaint, which was the identical property mentioned in the mortgage or deed of trust, was ordered sold, and was thereafter sold in accordance with that decree; that, in accordance with the terms of the decree of foreclosure, the bonds which were secured by the mortgage or deed of trust were taken in full payment of the mortgage debt, and the bonds have been surrendered and canceled; that the appellant has been fully paid and its cause of action fully and completely discharged of record; that the present appeal does not relate to or in any way affect such proceedings, and the appellant is not interested either adversely or otherwise in preventing the enforcement of the decree now before the court.

[2-4] It is a fundamental rule of appellate jurisdiction that every person desiring to appeal from a decree must be interested in the subject-matter of the litigation, and the interest must be immediate and pecuniary and not a remote consequence of the judgment. The interest must be substantial, and a merely nominal party to an action cannot appeal. The interest must also be subsisting, for although a party may have an appealable interest at the commencement of the suit, if that interest has terminated before the entry of the judgment or decree sought to be appealed from, he cannot appeal. Again, the right or title which the appellant seeks to establish must be his own and not that of a third person. 2 Ruling Case Law, pars. 33, 34. See, also, notes to In re Switzer, 119 Am. St. Rep. 741, where cases in support of the principles stated are cited.

If it be contended that the appellant is interested in the reversal of the decree involved in this appeal to avoid liability for a deficiency in the funds of the receivership to pay the judgment in favor of the appellee, the answer is that there is no such liability. That was held by the Supreme Court of the United States in Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155. In that case, after a decree in favor of the complainant foreclosing a mortgage, and after the mortgage property had been sold in satisfaction of the decree, it was found that there was a deficiency in the funds to pay the expenses of the receivership. This was not anticipated and not provided for at the commencement of the suit or upon the appointment of the receiver. Upon the petition of the receiver, there was an order upon the complainant to show cause why it should not be required to pay this deficiency. The circuit court held that it was without authority to compel the complainant to pay the deficiency. The Circuit Court of Appeals held otherwise. The case was finally

taken to the Supreme Court, where it was held that the complainant was not liable to make good the deficiency found to exist in the funds required for the expenses of the receivership, and that, unless terms are imposed by the court as a condition of the appointment or continuation in office of the receiver, his employés must look to the property in the custody of the court and its income for their compensation. The court distinctly holds that the employés have no claim whatever on any of the parties to the litigation; that they are the employés and servants of the court and not of the parties. This principle is clearly as applicable to an employé claiming damages for injuries sustained while in the employment of a receiver as a claim by an employé for wages while in such employment.

The principle that the property is liable for the expenses of the receivership was declared by the Appellate Division of the Supreme Court of New York in Robinson v. New York & S'. I. Electric Co., 99 App. Div. 509, 512, 91 N. Y. Supp. 153, 155. That court said:

"When the court took into its possession the property of the defendant, and undertook to continue the plant in operation for the benefit of judgment creditors, it did so subject to the same risks which would attach to the corporation if it continued to exercise its franchises, and among these risks was that of personal injuries to employés through the negligence of the agent or servants of the court. It could not continue the operation of the plant and deny to those injured through its negligence a remedy so long as the property in the hands of the court was adequate to discharge the obligation, for it would be a gross injustice to hold that the rights of the injured employé could be made secondary to those of creditors in whose behalf the plant was being operated; that they could take some portion of his rights and apply them to the payment of their debts. While it is true that claims for injuries occurring before the receivership are not commonly allowed a preference over the claims of others, we know of no case which is controlling here which has asserted the doctrine that creditors or holders of receiver's certificates can be preferred over the claim of those who have suffered injury through negligence while the plant was in the control of the receiver for the benefit of creditors. On the contrary, the rule is established by authority that damages for injuries to persons or property during the receivership, caused by the torts of the receiver's agents and employés, are passed as operating expenses, and are accorded the same priority of payment as belongs to other necessary expenses of the receivership. Such claims are paid out of the net income, if that is sufficient; but, in the event of a deficiency, they will be paid out of the corpus. Such claims, therefore, have priority over mortgage debts, or other debts existing when the action was brought in which the receiver was appointed."

[5] It follows that while the present case, as here stated, seems to call for an affirmance of the decree of the court below on the merits, there are serious objections to such a disposition of this appeal. As far as we can determine from the record before us, the legal title to the property in controversy has been conveyed to the Cornucopia Mines Company of New York, and that corporation is not a party to these proceedings, has not asked to be made a party, and the appellant does not represent it. The property was conveyed pendente lite; that is to say, the order appointing the receiver provided that, out of the money that should come into the hands of the receiver, the expenses incurred in operating the property should be paid; and the decree under which the property was conveyed provided for the payment of the expenses

of the receivership prior to the payment of the amount due the bond-holders, and the expenses of the receivership had not been adjusted or paid at the time of the conveyance. The purchaser took the property, therefore, burdened with whatever deficiency there might be in the expenses of the receivership. The court deals with the property in rem and not with the parties, unless the parties show they have an interest in the property and come into court in that behalf. In this view of the proceedings it is clear the appellant has no appealable interest in this controversy. It has parted with whatever rights it had in the property upon which the judgment of the lower court has been imposed as a lien and cannot be prejudiced by subsequent proceedings.

It appears to us that this situation calls for a dismissal of the appeal; and it is so ordered.