[L. A. No. 19456.   In Bank.   Apr. 2, 1946.]

CONSOLIDATED VULTEE AIRCRAFT CORPORATION (a Corporation), Plaintiff and Appellant, v. UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL 904, Defendant and Appellant.

Gibson, Dunn & Crutcher, J. Stuart Neary and Ira C. Powers for Plaintiff and Appellant.

Katz, Gallagher & Margolis, Milton S. Tyre and Ben Margolis for Defendant and Appellant.

TRAYNOR, J.—On June 1, 1942, United Automobile Aircraft and Agricultural Implement Workers of America Local 904, hereinafter referred to as the union, and Consolidated Vultee Aircraft Corporation, hereinafter referred to as the company, entered into a collective bargaining agreement, which was to remain in effect "until June 1, 1943 or, until ninety (90) days after the present war in which this country is engaged is terminated, whichever is longer, and shall thereafter automatically renew itself in its entirety from year to year for a period of one (1) year." On February 19, 1945, the parties entered into a new collective bargaining agreement superseding the former one. They also entered into a separate agreement providing that the agreement of February 19, 1945, shall not prejudice the claims of either party on the present appeal and shall not affect the parties' contentions "concerning the advisability of including therein appropriate provisions on maintenance of membership and check-off."

The present litigation arose under the first agreement, which provided that "if mutual consent for amending Agreement is not given, the desirability of amendment may be referred to the grievance procedure." Grievances were to be submitted to the plant grievance committee of the union and the company's labor relations committee. If the company and union representatives could not agree, they could invoke the arbitration procedure provided for in the agreement. The union initiated grievance proceedings to obtain an amendment

adding provisions for maintenance of membership and check-off of union dues and initiation fees. Having failed in the grievance procedure to secure the company's consent to such an amendment, the union invoked the arbitration procedure to have the following amendment added to the contract: "In order to secure the increased production which will result from greater harmony between workers and employers and in the interest of increased cooperation between union and management, which cannot exist without a stable and responsible union, the parties hereto agree as follows: All employees who, 15 days after the date of this amendment to the contract are members of the union in good standing in accordance with the constitution and bylaws of the union and those employees who may thereafter become members shall, during the life of the agreement as a condition of employment, remain members of the Union in good standing. The Company for said employees shall deduct from the first pay of each month the union dues for the preceding month of one dollar ($1.00) and promptly remit the same to the secretary-treasurer of the Local Union. The initiation fee of the Union of three dollars ($3.00) shall be deducted by the Company and remitted to the secretary-treasurer of the Local Union in the same manner as dues collection. The Union shall promptly furnish to the Company a notarized list of members in good standing 15 days after the date of the amendment to the contract. If any employee named on that list asserts that he withdrew from membership in the Union prior to that date and any dispute arises the assertion or dispute shall be adjudicated in accordance with the arbitration procedure of this agreement and the decision of the arbiter shall be final and binding upon the Union, the Employer and the employees."

The permanent arbitrator elected by the parties under the contract made an award determining that the parties should add the proposed amendment to their contract. The company filed a motion in the superior court under sections 1288, 1290 of the Code of Civil Procedure to vacate the award on the ground that the arbitrator impaired the exclusive right retained by the company to hire and discharge its employees and exceeded his jurisdiction in violation of the provision in the agreement that the arbitrator "shall not have jurisdiction to arbitrate provisions of a new agreement or to arbi-

trate away, in whole or in part, any provisions of this Agreement." The union filed a cross-motion for confirmation of the award under sections 1287 and 1291 of the Code of Civil Procedure. The court made an order confirming the award, but a month later corrected its order *nunc pro tunc*, stating "that the foregoing amendment does not and shall not be construed to impose any obligation upon the employer to discharge any employee for failure to maintain in good standing his membership in the union according to the Constitution and By-laws of the Union and does not impair the exclusive right to hire and discharge employees given by Article I, Section 6, of the contract to which the amendment relates." The order of the court must be read with this correction. By correcting its order, the court determined that it had jurisdiction to make the correction. The corrected order became the court's disposition of the case and was subject to the right of the parties to appeal. The decision of the court as corrected, nominally a confirmation of the award, was actually a cancellation thereof, for the award made maintenance of membership in the union "a condition of employment" for all employees who were or became union members after the expiration of the 15 days' escape period specified in the award. The order must be read as also denying confirmation to the check-off provision, for it appears from the arbitration proceedings that the check-off of initiation fees and union dues was applied for and allowed only as an incident to the maintenance of membership provision in order to prevent forfeiture of employment by nonpayment of union fees and dues. Both parties appeal.

It is contended that the appeals have become moot because the new agreement has superseded the agreement that was to be amended under the award. An amendment that would become inoperative with the termination of a contract obviously cannot take effect after such termination. Since the amendment to which the award relates has become obsolete, a confirmation of the award would be meaningless. A court will not continue with the review of an arbitration award in proceedings for its confirmation or vacation, if the award does not affect the present relations of the parties, just as it will not continue with the review of a decision by a court if the decision cannot be enforced. As the United States Supreme Court declared in *Mills* v. *Green*, 159 U.S. 651, 653

[16 S.Ct. 132, 40 L.Ed. 293] : "the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." (See *California Pacific etc. Co.* v. *California Mining & D. Syndicate,* 17 Cal.App.2d 353, 355 [61 P.2d 1181]; *General Petroleum Corp. of California* v. *Beilby,* 213 Cal. 601 [2 P.2d 797]; *Armstrong* v. *Sacramento Valley Realty Co.,* 179 Cal. 648, 651 [178 P. 516]; *Estate of McSwain,* 176 Cal. 287, 288 [168 P. 117]; *Hindman* v. *Owl Drug Co.,* 4 Cal.2d 451, 456 [50 P.2d 438]; *Fletcher* v. *Dexter,* 60 Cal.App.2d 275 [140 P.2d 697]; see 2 Cal.Jur. 749; 1 Cal.Jur. 10-Yr. Supp. 465.)

The union contends, however, that it would be entitled to recover damages from the company if the award were confirmed. In this regard the union asserts that subsequent to the award and before the new contract was made, thousands of union members failed to pay their dues and thereby became delinquent in their membership; that such delinquencies would not have occurred had the maintenance of membership clause been in effect; and that therefore the company, by opposing the award in the confirmation proceedings, was responsible for the union's loss of union dues. The union, however, could claim damages only if the company was guilty of a breach of contract. There was no such breach, for the company was under no duty to agree to the amendment of the contract in the absence of a confirmation of the award. Under the pertinent provisions of the Code of Civil Procedure an award becomes enforceable only if it is confirmed by the superior court (§ 1287). Upon such confirmation it is made enforceable by the entry of a judgment (§ 1291), which "has the same force and effect, in all respects, as, and is subject to all provisions of law relating to, a judgment in an action; and . . . may be enforced, as if it has been rendered in an action in the court in which it is

entered.'' (§ 1292.) In the present case, since the company had made a motion to vacate the award, no order of confirmation and no judgment for the enforcement of the award could be entered until the motion to vacate the award was disposed of. (§§ 1287, 1288.) Since the order that the trial court entered before the new contract was made was in effect an order vacating the award, the company was under no enforceable duty to agree to the amendment.

The duty that would have been imposed upon the company by the award had it become enforceable did not exist independently of the award. The award was not made to determine existing contract rights; its purpose was to create contract rights that had not previously existed and therefore could not be enforced or violated before the award became enforceable. There is a clear distinction between such an award and an award determining that existing contract rights have been violated. ''Arbitration is frequently used as a method in the settlement of labor disputes. Occasionally it is used to interpret the terms of an existing contract, but more often it is utilized for the purpose of making a contract, or creating or perfecting the relation of employer and employee between the respective parties. Arbitrations concerning wage disputes and union recognition are of this type. They are not judicial in their nature but are rather a part of the collective bargaining process. These arbitrations are like commercial arbitrations in name alone.'' (6 Williston, Contracts, rev. ed., § 1930.) The present award is also clearly distinguishable from an award prescribing an increase in wages as of a specified date. If such an award is confirmed after the date specified for the commencement of the wage increase, it follows from the terms of the award that back-pay can be collected thereunder after its confirmation. Such back-pay represents, not the payment of damages for violation of a contract, but the performance of an obligation created by the award.

The union also contends that a determination that the award was valid and should have been confirmed would greatly improve its bargaining position. In this respect it refers to the provision in the present collective bargaining agreement that the agreement will not affect the contentions of the parties as to the advisability of including therein provisions on maintenance of membership and check-off. It contends that ''The very existence of maintenance of member-

ship and check-off clauses in the recently expired contract would provide a greater arguing point for the union in demanding the same in its present 1945-1946 contract and in all future contracts. . . . It is well known among those who participate actively in collective bargaining negotiations that the presence or absence of a particular clause in a recently expired contract often is the most influential factor in determining the presence or absence of the same provision in the next following contract." If present rights of the union or the company depended on the validity of the award, the appeals would not be moot even though the amendment could not be put into effect. Thus, if the present agreement provided that maintenance of membership and check-off provisions should be inserted therein if the award validly provided such amendment of the former agreement, the determination of its validity would involve present contract rights of the parties and would therefore not be an abstract decision. The union does not claim, however, that its rights under the new contract depend upon the determination of the present litigation. It contends merely that its chances to improve its present contract would be increased if it were determined that the award should have been confirmed. An appeal is prevented from becoming moot only if the rights of the parties are directly affected by its determination. Their interest must be "immediate . . . and not a remote consequence of the judgment." (*Hamilton Trust Co.* v. *Cornucopia Mines Co.,* 223 F. 494, 499 [139 C.C.A. 42]; *California Pac. etc. Co.* v. *California Mining & D. Syndicate, supra,* 17 Cal.App.2d 353, 354.) The possibility that the union might be able to utilize a favorable decision on its present appeal for the creation of future contract rights does not constitute such an immediate interest in the present litigation as is required for proceeding therewith to a judgment on the merits.

The questions presented on these appeals having become moot, the appeals are dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.