Filed 10/28/24  In re E.M. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.M. et al., Persons Coming Under the Juvenile Court Law. | B329164 (Los Angeles County Super. Ct. Nos. 23LJJP00009A, 23LJJP00010A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>G.M.,<br><br>        Defendant and Appellant. | |

APPEALS from orders of the Superior Court of the County of Los Angeles, Jennifer W. Baronoff, Judge Pro Tempore. Affirmed.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

## I.  INTRODUCTION

G.M. (father) appeals from the jurisdictional orders declaring his three children[1] dependents of the juvenile court under Welfare and Institutions Code section 300[2] based on his physical abuse of his son and substance abuse issues.  We affirm.

---

[1]  The children are father's eldest daughter E.M. and son L.M., born to mother A.M. in December 2009 and September 2012, and his younger daughter N.M., born to mother R.S. in April 2020.  The mothers did not appeal from the jurisdictional findings or disposition orders.

[2]  All further references are to the Welfare and Institutions Code.

## II.    BACKGROUND

A.    *Petition*

On November 10, 2022, the Los Angeles County Department of Children and Family Services (Department) received a referral alleging physical abuse of L.M. by father that also placed E.M. and N.M. at risk.

On November 18, 2022, a social worker received a call from L.M.'s school counselor who reported that, the prior Wednesday, L.M. was "upset" and "unable to stay on task." L.M. told the counselor that his day was "'ruined'" because father had slapped him. According to L.M., when father became angry, he would hit L.M., which happened "pretty often." The counselor also explained that L.M. did not attend class regularly, father would not return calls from the school, and he had not communicated with the school that year. The social worker reported that when she called father, he hung up on her and when she and a Los Angeles County Sheriff's deputy tried to interview father at his home, he told them he would not allow them inside without a warrant.

On November 28, 2022, an emergency response social worker interviewed E.M. at her middle school and she explained that she lived in father's home along with L.M. and N.M. and that they had a live-in caretaker. E.M. also advised that she and L.M. visited with mother A.M. on holidays and some weekends. She denied that father used corporal punishment to discipline her or her siblings and claimed that she did not know anything about the reported slapping incident. She also reported in a

3

subsequent interview that L.M. tended to lie and that she had never seen father hit L.M. in the face.

On November 29, 2022, a social worker and a deputy interviewed L.M. at his grade school, and he told them that father had instructed him not to speak with the deputy unless father was included in the interview. But he then talked about the incident, explaining father became angry at him that morning because he could not tie his shoes and hit him in the head four times. L.M. said "his head hurt and he began to cry." But L.M. claimed it was an isolated incident and denied that he or his siblings were physically abused in the home.

On December 7, 2022, an emergency response social worker interviewed mother A.M. who advised that E.M. and L.M. visited her every other weekend, on school breaks, and on holidays. She described the informal custody arrangement as "mutually agreed upon" between her and father.

Mother A.M. also advised that when she asked L.M. about the incident, he said father "slapped him in the face once" because he was unable to tie his shoes. When she asked E.M. about the incident, she said that she had already left for school on that day and was unaware of it.

According to mother A.M., father instructed the children not to discuss "what goes on in his home" and she often had trouble obtaining information from the children. A.M. also reported that father did not allow her to speak to the children on the house phone and had taken E.M.'s cell phone because he suspected she told A.M. "things that go on in the home." A.M. believed father limited the children's social life "to keep things in the home as private as possible." And, she suggested that father "coach[ed] the children."

4

Mother A.M. further advised the social worker that she left father in January 2016 after an eight-year relationship. When she decided to leave him, "'[h]e got drunk'", beat her, tried to kill her, and took her phone.

Mother A.M. informed the social worker that father worked from 1:30 p.m. to 10:30 p.m. She believed that the children missed an excessive amount of school because, according to her conversations with E.M., father would "'f[a]ll asleep drinking'"; and A.M. knew from her own experience that father could "stay up all night drinking an 18[-]pack of beer." She also stated that she had seen beer cans in the home and refrigerator and was concerned about father's beer consumption.

On December 7, 2022, a social worker interviewed mother R.S. who was reluctant to provide her home address due to concern that father would restrict her access to N.M. She explained that father had restricted her access to N.M. in the past when she cooperated with the Department during other investigations. She further explained that father claimed to have an order, which she had never seen, granting him primary custody of N.M. pursuant to which he allowed her to visit N.M. every other weekend in his home.

Mother R.S. advised that she left father because he was verbally abusive to her; but they were still in a "dating relationship." She claimed father had "'anger problems'", drank "a lot"—sometimes as much as a 12-pack of beer—and, when he drank, he would become "unexpectedly angry, yelling and cursing a lot", and would tell R.S., "'You will never see [N.M.] again.'"

On January 10, 2023, the Department filed two section 300 petitions against father, one on behalf of N.M. and the other on behalf of E.M. and L.M.

5

As to N.M., the Department alleged in counts a-1, b-1, and j-1, that father physically abused L.M. and such abuse placed N.M. at risk of serious physical harm and physical abuse. In count b-2, the Department alleged that father's history of substance abuse and current abuse of alcohol rendered father incapable of providing regular care and supervision of N.M. and placed N.M. at risk of serious physical harm.

As to E.M. and L.M., the Department alleged in counts a-1, b-1, and j-1, that father physically abused L.M. and that such abuse placed E.M. and L.M. at risk of serious physical harm and physical abuse. In count b-2, the Department alleged that father's history of substance abuse and current abuse of alcohol rendered father incapable of providing regular care and supervision of the children and placed the children at risk of serious physical harm.

B.    *Jurisdiction and Disposition*

In the February 21, 2023, jurisdiction/disposition report, father explained the incident with L.M., claiming he was "'working off little sleep and was frustrated'" that morning. When L.M. forgot how to tie his shoes while getting ready for school, father yelled at him and "tapped his head one time." Father denied ever telling L.M. not to talk about the incident and also denied hitting the children, claiming this was an isolated incident. Father conceded that he drank beer occasionally, but not in the presence of the children. He denied using crack cocaine, but admitted past recreational cocaine and marijuana use.

Mother R.S. told the social worker that father only resorted to physical discipline "'as a last resort.'" She described the discipline as "'like a smack or something, but not abusive, not hitting them to the point of being abused or bleeding.'" She also stated that father drank alcohol, but did not believe he would get drunk to the point of not being able to care for a child.

L.M. told the social worker that father "'tapped lightly'" on the side of his head when he was unable to tie his shoes. But he gave inconsistent responses when asked whether father had ever done something like that before.

The children's live-in caretaker told the social worker that she had no concerns for the children in father's care. But in a subsequent interview, she admitted that she initially lied about having no concerns for the children because father was nearby during her interview. She also confirmed the physical abuse allegation, saying she heard father slap L.M. and the child crying. The social worker reported that the caretaker moved out of father's home after talking to her.

At the April 26, 2023, jurisdiction and disposition hearing, the juvenile court dismissed count a-1 as to E.M. and N.M., but sustained the other counts.

Father timely appealed from the jurisdiction and disposition orders.

C.     *Post-Disposition Proceedings*

While father's appeals were pending, the juvenile court terminated dependency jurisdiction over the children and entered exit custody orders: (1) granting mother A.M. and father joint legal and physical custody of E.M. and L.M., with A.M.'s home

7

designated as their primary residence and father having specified "parenting time" with them; and (2) granting mother R.S. and father joint legal and physical custody of N.M., with father's home designated as her primary residence.[3]

### III.  DISCUSSION

A.  *Motion to Dismiss*

1.  <u>Background</u>

With its respondent's brief, the Department also filed a motion to dismiss, arguing that father's appeals are moot and should be dismissed because the juvenile court's subsequent custody orders, and father's failure to appeal from them, prevent us from providing father any effective relief.

Father opposed the motion.

2.  <u>Analysis</u>

"A case becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" [(*Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863.)]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks.  (See *id.* at p. 865.)" (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  "Even when a case is moot, courts may exercise their

---

[3]  The Department's request for judicial notice is granted.

'inherent discretion' to reach the merits of the dispute." (*Id.* at p. 282.)

Generally, once a juvenile court terminates jurisdiction, an appeal from an earlier order is moot. (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163.) Nonetheless, "a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent [citation]." (*In re D.P., supra*, 14 Cal.5th at pp. 277–278.)

Here, the jurisdictional findings resulted in an exit order that changed the primary residence of E.M. and L.M. from father's home to their mother's home and limited father's contact with them. On this record, we conclude father's challenge to the jurisdictional findings as to these children is not moot and therefore deny the Department's motion to dismiss. As to N.M., even if the appeal were otherwise moot, for father's benefit, we explain below why father's appeal is without merit. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

B.    *Jurisdictional Findings*

Father contends that the jurisdictional findings were not supported by substantial evidence.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We draw all reasonable inferences in favor of the findings and orders of the juvenile court and do not reweigh the evidence or reassess credibility. (*Ibid.*)

9

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of a custodian with whom the child has been left.'" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)

Here, the evidence showed that father struck L.M., causing pain and making him cry, because the child could not tie his shoes. L.M.'s school counselor described him on the morning of the incident as upset and unable to stay on task. Father did not deny striking the child, instead characterizing the physical contact as a tap and explaining that he was sleep-deprived. In addition, the children's live-in caretaker heard father striking L.M. but did not initially disclose the incident to Department investigators because she was intimidated by father. The evidence further showed that father had unresolved anger issues and limited access to the children and information about what went on in the home.

That evidence supported a reasonable inference that there was a substantial risk the children would suffer serious physical harm while under father's care.  Indeed, the circumstances under which the incident occurred—in the morning while the child dressed for school and father was sleep deprived—suggested that striking him in the face or head was unwarranted and excessive and more likely the result of father's anger issues than a genuine desire to discipline L.M.  (*In re D.M.* (2015) 242 Cal.App.4th 634, 641 ["Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of th[e] parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive'"].)  Having concluded that substantial evidence supported counts b-1 of the petitions, we need not discuss the merits of father's challenge to the other counts of the petitions. (*In re I.J., supra*, 56 Cal.4th at p. 773.)

## IV.   DISPOSITION

The juvenile court's jurisdictional order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

DAVIS, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.