Filed 6/17/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SABLE OFFSHORE CORP. et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA COASTAL COMMISSION,<br><br>    Defendant and Respondent. | 2d Civ. No. B347601<br>(Super. Ct. No. 25CV00974)<br>(Santa Barbara County) |

Sable Offshore Corp. and Pacific Pipeline Company (Sable) appeal after the trial court granted a preliminary injunction in favor of the California Coastal Commission (Commission). Sable principally contends the Commission lacked jurisdiction to issue the cease and desist order that the preliminary injunction enforced. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Sable owns the Las Flores Pipelines, portions of which are located within the coastal zone in an unincorporated area of Santa Barbara County (County). These onshore pipelines are designed to transport crude oil. In 1986, in accordance with the

County's certified local coastal program, the County approved the project that created the Las Flores Pipelines. The County issued multiple Coastal Development Permits (CDPs) to that effect. The Las Flores Pipelines were completed in 1990 and remained in service until the 2015 Refugio Beach oil spill.

In 2024, Sable acquired the Las Flores Pipelines and began conducting repair and maintenance activities. Sable identified 121 sites requiring anomaly repair work within the unincorporated County and the coastal zone. On September 27, 2024, the Commission sent Sable a Notice of Violation directing Sable to cease any unpermitted activities. One week prior, the Commission had requested the County take enforcement action. The County stated it would review and respond.

On November 12, 2024, an Executive Director Cease and Desist Order was issued pursuant to Public Resources Code section 30809.[1] It ordered Sable to "apply for a CDP for any proposed future work to be undertaken along the Pipelines, as well as for after-the-fact . . . authorization for unpermitted development that has already occurred, by submitting a complete CDP application to" the County. By law, the order expired on February 10, 2024.

On November 22, 2024 and December 6, 2024, Sable submitted zoning clearance applications to the County. On February 12, 2025, the County sent Sable a letter concluding the "pipeline anomaly repair work is authorized by the existing permits . . ." and that the County "will be returning the Zoning Clearance applications to Sable without taking action on them." On February 17, 2025, the Commission again requested the

---

[1] Undesignated statutory references are to the Public Resources Code.

County take enforcement action.  On February 18, 2025, the Commission issued another Executive Director Cease and Desist Order.  That same day, Sable filed a verified complaint for damages and declaratory and injunctive relief.

On April 9, 2025, the County sent the Commission a letter that asserted the County "did not allow activity without a permit, nor did the County take an action on a permit or development application that may be appealable to the Coastal Commission." On April 10, 2025, the Commission issued a cease and desist order under section 30810, a restoration order, and an administrative penalty.  The next day, Commission Deputy Director Cassidy Teufel observed active construction and heavy equipment operating at locations from which one of the Las Flores Pipelines was accessible.

On April 16, 2025, the Commission filed a cross-complaint for declaratory and injunctive relief.  The Commission also filed an ex parte application for order to show cause and temporary restraining order.  Sable filed an opposition to the ex parte application.

On April 17, 2025, following a hearing, the trial court ordered Sable to show cause why a preliminary injunction should not be ordered.  The court declined to issue a temporary restraining order.

Following argument at a May 28, 2025 hearing, the trial court granted the application for preliminary injunction.  The Commission filed a proposed order and served it on Sable, which objected.  On June 10, 2025, the trial court nonetheless entered

the order granting the preliminary injunction.  Sable appeals from that order.[2]

## DISCUSSION

### *Statutory Background*

"The Coastal Act 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California.'" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793 (*Pacific Palisades*).)  Among the Legislature's goals were to (1) "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources" and (2) "[e]nsure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state." (§ 30001.5, subds. (a), (b).)  The Coastal Act "shall be liberally construed to accomplish its purposes and objectives."  (§ 30009.)

Generally, "any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit . . . ."  (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794.)  The Coastal Act requires cities and counties to "create a 'local coastal program' to implement the provisions and policies of the Coastal Act."  (*Cave Landing, LLC v. California Coastal Commission* (2023) 94 Cal.App.5th 654, 660; §§ 30108.6, 30109, 30500.)  Once the Commission "certifies a local government's program, and all implementing actions become effective, the commission delegates authority over coastal development permits to the local government."  (*Pacific Palisades*, at p. 794; §§ 30519, subd. (a), 30600.5, subds. (a), (b), (c).)

---

[2] We grant the unopposed motions for judicial notice filed by both parties.  (Evid. Code, §§ 452, subds. (c)-(d), 459.)

4

"'[U]nder the Coastal Act's legislative scheme, . . . the [local coastal program] and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy.' . . . '[A] fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.'" (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794.)

*Mootness*

The Commission argues the appeal is moot because the trial court has subsequently upheld the cease and desist order. We disagree. "An appeal is moot when a decision of 'the reviewing court "can have no practical impact or provide the parties effectual relief."'" (*Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 848.) The preliminary injunction remains in effect. Thus, our decision could provide relief.

*Commission's Authority to Issue*
*the Cease and Desist Order*

The statutory basis for the preliminary injunction Sable challenges is section 30803, which provides in part that "[a]ny person may maintain an action for declaratory and equitable relief to restrain any violation of this division [or] a cease and desist order issued pursuant to Section . . . 30810 . . . . On a prima facie showing of a violation of this division, preliminary equitable relief shall be issued to restrain any further violation of this division." (§ 30803, subd. (a).)

Section 30810, in turn, allows the Commission to issue a cease and desist order under several circumstances. Some of those circumstances involve activity relating to a Commission permit. (§ 30810, subd. (a).) However, an "order may also be issued to enforce any requirements of a certified local coastal program or port master plan, or any requirements of this division

5

which are subject to the jurisdiction of the certified program or plan, under any of the following circumstances:

"(1) The local government or port governing body requests the commission to assist with, or assume primary responsibility for, issuing a cease and desist order.

"(2) The commission requests and the local government or port governing body declines to act, or does not take action in a timely manner, regarding an alleged violation which could cause significant damage to coastal resources.

"(3) The local government or port governing body is a party to the violation."  (§ 30810, subd. (a).)

The parties' dispute hinges on section 30810, subdivision (a)(2).  Sable contends that subdivision is inapplicable because the County acted by "expressly determining in response to Sable's Zoning Clearance applications and confirming in correspondence to Sable *and the Commission* . . . that Sable's repair and maintenance activities do not require any new or amended CDPs and that '[n]o permits will be required.'"  The Commission counters that "the County's responses are clearly not the type of actions envisioned" by section 30810.

"Where the grant or denial of a preliminary injunction depends upon the construction of a statute, our review is de novo."  (*Greenfield v. Mandalay Shores Community Assn.* (2018) 21 Cal.App.5th 896, 899 (*Greenfield*).)

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose."  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  "'We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.]  We do not, however, consider the statutory language in isolation . . . .  We must harmonize the various parts of the

6

enactments by considering them in the context of the statutory [framework] as a whole.  [Citation.]  If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.'" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14 (*Skidgel*).)

We conclude section 30810 authorized the Commission's cease and desist order.  "Absent 'a specific statutory definition of [a word,] we may "look to [its] plain meaning . . . as understood by the ordinary person, which would typically be a dictionary definition."'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1035.) One definition of "act" is "the doing of a thing."  (Merriam-Webster Dict. Online (2026) <http://www.merriam-webster.com/dictionary/act> [as of May 18, 2026]; Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 11.)  Sable asserts Merriam-Webster defines "act" as "to give a decision," but does not cite any specific dictionary.  Sable may be referring to the definition "to give a decision or award."  (Merriam-Webster Dict. Online (2026) <http://www.merriam-webster.com/dictionary/act> [as of May 18, 2026].)  Regardless, given "act" is an elastic word with multiple meanings, dictionary definitions are of limited utility.  (*Skidgel*, *supra*, 12 Cal.5th at p. 20 ["'[t]he interpretation of a statute . . . should not end . . . with a dictionary definition of a single word used therein'"].)

We reject Sable's statutory interpretation because it implausibly characterizes a county that declines to act as taking action.  By distinguishing the concepts of "declin[ing] to act" and "not tak[ing] action in a timely manner," the statute implicitly recognizes that certain conduct is inherent even in declining to

act. (§ 30810, subd. (a)(2).) As in the present case, that conduct might typically include communication with the Commission and concerned parties, as well as any attendant internal review and determination. But such conduct—the "act" of declining to act—cannot itself prevent the Commission from issuing a cease and desist order. Otherwise, the statute would be self-negating. Simply by virtue of declining to act, a county would have acted, thereby rendering the statute inapplicable. (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1285 ["'Well-established canons of statutory construction preclude a construction [that] renders a part of a statute meaningless or inoperative.'"].)

Here, the County had ample opportunity to act. It deliberately declined to do so. After Sable submitted zoning clearance applications, the County stated it "will be returning the . . . applications to Sable without taking action on them." In a letter to the Commission, the County stated it did not "take an action on a permit or development application that may be appealable to the Coastal Commission." Any of these actions might well have eliminated the Commission's authority under section 30810, subdivision (a)(2). Yet the County expressly rejected those alternatives. Given that the County declined to act regarding the alleged violation, the Commission properly exercised its authority under the statute.

Sable's attempt to equate a county "decision" and "action" is unavailing. Section 30802 uses the phrase "decision or action of a local government," which indicates the terms are not equivalent. (§ 30802; see also *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1332 ["'A construction rendering some words in the statute useless or redundant is to be avoided.'"]; *People v. Ruiz* (2018) 4 Cal.5th 1100, 1113 ["'[W]hen a term appears in different parts of the same act, or in related sections of the same code, the term

8

should be construed as having the same meaning in each instance.'"].)

Sable objects that the word "enforcement" does not appear in section 30810, subdivision (a)(2). But neither does the provision contain any language limiting the type of action the Commission can request, except that it must be "regarding an alleged violation which could cause significant damage to coastal resources." (§ 30810, subd. (a)(2).) A request for enforcement action to curtail that potential damage certainly constitutes one reasonable option. Moreover, subdivision (a) states that the Commission's cease and desist order may be "issued to *enforce* any requirements of a certified local coastal program . . . ." (§ 30810, subd. (a), italics added.) It is logical that the Commission would request county enforcement action before undertaking its own enforcement through a cease and desist order.

Sable also puts undue emphasis on section 30810, subdivision (a)(2)'s reference to an "alleged" violation. Read in context, the word "alleged" simply recognizes that no final determination as to the existence of a violation has been made. For example, a cease and desist order could be challenged in court. (§ 30803, subd. (b) [court may stay the operation of a cease and desist order after noticing Commission and holding a hearing].) The word "alleged" does not afford the County a right to override the Commission's request for action. Nowhere does section 30810, subdivision (a)(2) condition the Commission's authority on the county's agreement that a violation exists.

Assuming the statute's language is ambiguous, the statute's history confirms the County declined to act. When originally enacted in 1991, section 30810 allowed the Commission to issue cease and desist orders only if they related to a

9

Commission permit or if the local agency made a request. (Former § 30810, added by Stats. 1991, ch. 761, § 4.) In 1993, the Legislature amended the statute, adding subdivisions (a)(2) and (a)(3). (Stats. 1993, ch. 1199, § 4.) Both subdivisions expanded the Commission's authority by allowing the Commission to issue a cease and desist order even when the Commission and local agency are at odds. The Legislature could not have intended for the Commission's newfound authority to be thwarted by communication from an objecting county.

The legislative history supports this interpretation. A bill analysis states: "The author has introduced this measure to strengthen the Coastal Commission's enforcement program. According to the author: 'Illegal development in the Coastal Zone is a chronic problem. Many violations have resulted in irreparable damage to coastal resources, yet because of an inadequate enforcement system, little has been done to deter future violations.'" (Assem. Com. on Natural Resources, Analysis of Sen. Bill No. 608 (1993-1994 Reg. Sess.) as amended June 14, 1993; see also *Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 60, fn. 19 [courts may rely on statement of bill's author if contained in committee materials].) An interpretation subjecting the Commission's authority to a county's determination would conflict with the legislative intent to broaden the Commission's enforcement authority.

Such an interpretation would also contravene section 30007.5, which provides that conflicts between policies of the Coastal Act "be resolved in a manner which on balance is the most protective of significant coastal resources." (§ 30007.5; see also § 30810, subd. (a)(2) [pertaining to "an alleged violation which could cause significant damage to coastal resources"].)

10

We note the California Supreme Court recently decided *Shear Development Co., LLC v. California Coastal Commission* (2026) 19 Cal.5th 334 (*Shear*). *Shear* is distinguishable because it dealt with the Commission's appellate jurisdiction over a coastal development permit. (*Id.* at pp. 342-343.) Here, the Commission is not asserting appellate jurisdiction based on section 30603, which provides that "*an action* taken by a local government on a coastal development permit application may be appealed to the commission for" certain types of developments. (§ 30603, subd. (a), italics added.) As noted above, the County stated it did not "take an action on a permit or development application that may be appealable to the Coastal Commission." Rather than appellate jurisdiction, the Commission's jurisdiction is based on section 30810, a statute *Shear* did not cite, much less interpret.

The dissent's focus on the provisions of the 1986 permit is, in our view, misplaced. Although the County declined to act based on its interpretation of existing permits, the Commission's authority to issue a cease and desist order under section 30810 does not depend on a county's reasons for declining to act. Indeed, section 30810 is silent as to those reasons. We resolve an issue of statutory interpretation that is not contingent upon the permits' specifics.

*Balance of Equities*

Sable argues the balance of equities weighs in favor of Sable and of staying the preliminary injunction. However, section 30803 states in pertinent part: "On a prima facie showing of a violation of this division, preliminary equitable relief *shall be issued* to restrain any further violation of this division." (§ 30803, subd. (a), italics added.) Thus, once the trial court found a prima facie showing of a violation of the Coastal Act, the issuance of a

11

preliminary injunction was required under the statute. No balancing of equities was necessary. (See *Greenfield*, *supra*, 21 Cal.App.5th at pp. 899-903.)[3]

*Due Process*

Sable contends the court violated its due process rights by failing to (1) allow it to fully brief or argue the merits of its opposition; (2) allow cross-examination of a witness relied upon in the court's ruling; and (3) consider federal preemption questions Sable raised. No due process violation occurred.

First, the court did allow Sable to fully brief and argue the merits of its opposition. Sable filed an opposition and declaration in response to the Commission's ex parte application. At a hearing, the court stated that, to avoid being "swamped in briefing . . . I'm thinking that what I ought to do is consider that the moving papers are in, the response is in . . . ." Sable did not object to this procedure at the hearing.

---

[3] In an argument section exceeding 29 pages, Sable's opening brief offers two paragraphs that appear to argue for federal preemption, though neither paragraph uses the word "preemption." This argument, however, was made in a subsection on the balance of equities. As noted above, the balancing of equities was unnecessary here. Accordingly, any claim based on the balance of equities fails. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must state each point under a separate heading or subheading summarizing the point].)

To the extent Sable raises a federal preemption argument untethered from the balance of equities for the first time in its reply brief, we decline to address it. (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8 ["We do not consider arguments raised for the first time in a reply brief."]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 ["'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'"].)

12

Over a month later, on the day of the hearing as to whether a preliminary injunction should issue, Sable filed a supplemental declaration with eight attached exhibits totaling hundreds of pages.  The court read the declaration, which summarized the exhibits.  The court patiently considered oral argument during the hearing, at one point saying:  "I don't want you to feel that you have to go through it quickly.  I'll take the time that you need to present your case because I want to hear what you have to say."  Before entering the order granting the preliminary injunction, the court also "read and reread everything," which would include the CDPs on which Sable focuses.  (Italics omitted.)  The court afforded Sable a full and fair opportunity to propound its case.

Second, the court appropriately relied on the declaration of Cassidy Teufel, Deputy Director of the Commission.  The declaration established that Sable continued its work within the coastal zone after the April 10, 2025 cease and desist order.  The court granted the Commission's motion to quash the subpoena for Teufel and motion for protective order prohibiting the deposition of Teufel.

The court could nonetheless rely on Teufel's declaration to the extent it established undisputed facts.  Sable highlights Teufel's declaration that "[t]o the Commission's knowledge, Santa Barbara County has never granted Sable a permit to perform the work that Sable has been conducting on the Pipelines since Sable acquired the Pipelines."  But this point is not actually disputed because Sable argues that the County determined its work fell within prior permits issued to Sable's predecessor—not that the County granted Sable a permit.  Moreover, the trial court cited evidence apart from the Teufel declaration for the proposition that Sable did not obtain a permit.  The court did not abuse its

13

discretion or otherwise deprive Sable of due process. (See *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 359 ["We review a ruling on a motion to quash, like other discovery orders, for abuse of discretion."].)

Finally, Sable complains the trial court overruled its objections to the Commission's proposed order "and did not rule on the questions of federal preemption raised by Sable." But the court did rule: *"The Court has read and reread everything before making this ruling. The Court should overrule Sable's Objections and sign the [Proposed] Order submitted by Commission."* Thus, the court considered and rejected the contentions, including regarding federal preemption, that Sable had raised. Sable received due process.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

CODY, J.

I concur:

BALTODANO, J.

14

YEGAN, A.P.J., dissenting:

I respectfully dissent. I will explain why the California Coastal Commission (Commission) had no jurisdiction to "overrule" the County of Santa Barbara's (County) determination that the 1986 Permit allowed construction, maintenance, and repair of the pipeline. There was no, and is no, time limitation to the requirement to the "maintenance and repair" provision. This permitted and still permits the repair of the pipeline decades later. Indeed, a "maintenance and repair" requirement for the original construction certainly contemplates that such requirement would last as long as the pipeline was to be used.[4] Any other reading of the local permit would allow the pipeline to deteriorate without any remedy for the County. This would have been folly. The "cease and desist" order, the civil penalties, and the preliminary injunction should be vacated.

But first, a dose of reality. The repair work has been done. It is a "fait accompli." And, pursuant to federal intervention, oil is now flowing in the pipeline without incident. The supremacy clause of the United States Constitution takes precedence. The federal Government trumped the state's Commission "cease and desist" order and it trumps the preliminary injunction order. Based upon these events, the trial court should vacate the preliminary injunction, dismiss the matter as moot, and nullify the civil penalties. As Witkin has said: "If the judgment appealed from has become inoperative or unenforceable, it would be useless to affirm it." (9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 358, p. 390.) The instant preliminary injunction is now "inoperative" and "unenforceable." We should exercise judicial

---

[4] The Commission does not contest the "Maintenance and Repair" provision of the 1986 Coastal Development Permit.

restraint. (See also *Consolidated Vultee aircraft Corp. v. United Automobile Aircraft and Agricultural Implement Workers of America Local 904* (1946) 27 Cal.2d 859, 863 ["'when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff[s], to grant [them] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal'"].)

But the jurisdiction issue between the Commission and the County should be addressed. We again wade into a dispute between local governmental County land use permits/regulation and the Commission's attempts to regulate it. Public Resources Code section 30810, subdivision (a)(2)[5], allows the Commission to intervene where the County "declines to act." Here, the County did not "decline to act." It did act. It considered the matter after appellant made an application and proposed a plan for remediation. It decided that the 1986 Permit already authorizes "maintenance and repair." It notified the Commission by letter of its act, i.e., the determination that the "maintenance and repair" was authorized by the 1986 Permit. This is not a declination. The County is correct in its determination. The 1986 Permit is comprehensive, covers all contingencies including accidents, oil spills, and continues as "perpetual." It is single-spaced and 46 pages long. It could serve as an example of how a county can allow development with safeguards for all interested parties.

For example, I quote from the section entitled: "Systems Safety and Reliability" at page 34 of the 1986 Permit, which

_____

[5] All further statutory references are to the Public Resources Code unless otherwise stated.

2

states: "Celeron [original developer and owner] shall submit a detailed Safety Inspection, Maintenance and Quality Assurance Program for the pump stations, valves, and the pipeline which shall be implemented during construction and operations. The Program shall include, but not be limited to, inspection of construction techniques, regular maintenance and safety inspections, periodic safety audits, corrosion monitoring and leak detection, inspections of all trucks carrying hazardous and/or flammable material."

I cannot conceive of what the Commission could add to the comprehensive permit.

The presumption is that the County did, in fact, consider whether a new permit was required or not. And the presumption is that the County would monitor the "maintenance and repair." Nothing in the record rebuts this presumption. I suppose, parenthetically, that the County could have issued a new permit on the same terms as the original permit. This would not have been a "declination." How does a new permit authorizing "maintenance and repair" differ from relying on the 1986 Permit, which also authorizes "maintenance and repair"?

Section 30810, subdivision (a)(2) is specific, and the Commission does not have unlimited power to enter a "cease and desist" order merely because it disagrees with the County. The only way that the Commission has such power is to "reweigh" the facts and determine that a "major oil spill" from the pipeline is different and is not covered by the 1986 Permit. I do not see a "major oil spill" exception in the code or the permit. The Commission certified the local government's pipeline's decision in 1986. This delegation to the County cannot be rescinded decades later by the Commission. (*Pacific Palisades Bowl Mobile Estates,*

3

*LLC vs. City of Los Angeles* (2012) 55 Cal.4th 783, 794: see also, § 30519 subd. (a) [After certification of the local plan, the Commission no longer has power to review a local agency's lawful determination that its original permit is somehow unlawful].)[6]

This appeal and the continuing turf war between the County and the Commission should be put to rest. They are supposed to work together, and they should not be adversaries. As indicated, the "cease and desist" order should be vacated by the Commission. The preliminary injunction should be vacated by the superior court and any scheduled hearing on a permanent injunction should go off calendar. And, finally, the civil penalties should be vacated.

CERTIFIED FOR PUBLICATION.


YEGAN, A.P.J.

---

[6] "Except for appeals to the commission, as provided in Section 30603, after a local coastal program, or any portion thereof, has been certified and all implementing actions within the area affected have become effective, the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof. (§ 30519, subd. (a).)

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Alston & Bird, Jeffrey D. Dintzer and Garrett B. Stanton for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Daniel A. Olivas, Senior Assistant Attorney General, Norma N. Franklin, Supervising Deputy Attorney General, Wyatt Sloan-Tribe and Thomas Kinzinger, Deputy Attorneys General, for Defendant and Respondent.